In re SEVENTEENTH STREET, KANSAS CITY, v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, Appellant.

Division Two, June 6, 1905.

1. **STREET: Abandonment.** The city can at any time before property rights have vested abandon a procedure to establish a public street. And if the proceeding is abandoned by the city, it cannot be prolonged or continued by a private citizen, for it is fundamental that property cannot be condemned or a public street opened at the instance of an individual.

2. ———: ———: **Acts Which Amount to Abandonment: Prosecuted by Private Citizens.** In pursuance to an ordinance to open a public street, the mayor organized his court and the jury returned a verdict that the damages for the property taken exceeded the benefits to be derived by the city at large and by the property within the benefited limits as defined by the ordinance, and this verdict was transmitted to the council and by ordinance by it fully confirmed and approved, and that ordinance was approved by the mayor, and no further steps were taken by the city in the matter. Thereafter, a citizen who owned some lots within the benefited district, which had neither been taken, damaged nor assessed, appealed to the circuit court, and there the court aided by a jury assessed certain benefits against defendant's property. *Held,* that the city abandoned the proceeding to

open the street and thereafter the private citizen had no right of appeal, and the circuit court no jurisdiction over the matter.

3. ———: **Appeal.** No person whose property was neither taken, damaged nor assessed, can appeal from the verdict of the jury and its approval by the city council establishing a street and assessing benefits therefor, under the charter of Kansas City.

4. ———: ———: **Affidavit: Sufficiency.** An affidavit for an appeal to the circuit court from the action of the jury in a proceeding to assess benefits in connection with the establishment of a street, should state what interest the appealing party has in the proceeding; otherwise, the appeal is unauthorized. A statement that he is the owner of certain property affected by the judgment is not a compliance with the essential requirement of the charter that the affidavit state what interest he has in the proceeding.

Appeal from Jackson Circuit Court.—*Hon. Edward P. Gates,* Judge.

REVERSED.

*L. F. Parker* and *Pratt, Dana & Black* for appellant. ·

(1) All proceedings for opening Seventeenth street under ordinance 16129 were finally and conclusively ended by ordinance 17307, and everything done thereafter was without any authority of law and hence invalid. The second ordinance confirmed a verdict, which found that the damages to property to be taken under the first ordinance exceeded the benefits to be derived therefrom by the city at large and the property within the benefit district. The second ordinance, therefore, was a formal abandonment of all further proceedings by the city under the first ordinance, and it is well settled that the city had the right to abandon such proceedings. Simpson v. Kansas City, 111 Mo. 243; Whyte v. Kansas City, 22 Mo. App. 415; St. Joseph v. Hamilton, 43 Mo. 282; Silvester v. St. Louis, 164 Mo. 601. (2) No authorized appeal was taken to

the circuit court and, therefore, all proceedings in that court, including the judgment complained of by appellant, were without authority of law. The right to appeal in any case is purely statutory, and the provisions of the statute granting the right must be exactly complied with in order to make a successful appeal. 2 Ency. Pl. and Pr., 16; State ex rel. v. Woodson, 128 Mo. 514; Thomas v. Town Company, 89 Mo. App. 12; Schroeder v. Fabin, 94 Mo. App. 111; State v. Thayer, 158 Mo. 36. In the case at bar the right of appeal and the proceedings with regard thereto depend solely upon the charter of Kansas City (art. 7, sec. 5). Kansas City v. Oil Co., 140 Mo. 458; State ex rel. v. Field, 99 Mo. 352. Under those charter provisions the right of appeal was given only to the city and to some person whose property was either "taken, damaged or assessed by such proceeding," and as the property of no one was "taken, damaged or assessed" by the verdict of the mayor's jury or the ordinance confirming the same, no one had a right to appeal. The verdict and judgment thereon under said ordinance was not appealable under said provisions of the charter. Aldridge v. Spears, 101 Mo. 406; In re Big Hollow Road, 111 Mo. 329.

*R. J. Ingraham* and *S. S. Winn* for respondent.

FOX, J.—This cause comes to this court by appeal from a judgment of the circuit court of Jackson county, Missouri, against the defendant.

These proceedings were begun by the passage of an ordinance of Kansas City, Missouri, No. 16129, which was in words and figures as follows:

"AN ORDINANCE.

"To open and establish Seventeenth street from the west line of Holly street to the westerly line of Franklin street.

"Be it Ordained by the Common Council of Kansas City:

"Section 1.    That Seventeenth street be and the same is hereby opened and established from Holly street to the westerly line of Franklin street, the boundary lines of which shall be as follows, to-wit:   Beginning at a point on the west line of Holly street, at its intersection with the north line produced west of Seventeenth street; thence west along this prolongation to the north line of  Seventeenth street, to the westerly line of Franklin street produced north; thence south along this prolongation of the westerly line of Franklin street, to an interesection with the southerly line produced west of lot A, block 1, of resurvey of Whipple's second addition; thence east along the south lines of lots A and B of said block 1, to the west line of Holly street; thence north along the west line of Holly street to the place of beginning.

"And all private property within said limits is hereby taken and condemned for public use as a part of Seventeenth street and just compensation therefor shall be assessed, collected and paid according to law.

"Section 2.    The Common Council determines and prescribes the limits within which private property shall be benefited by the improvement herein proposed and be assessed and charged to pay compensation therefor, as follows, to-wit:

"Beginning at a point on the west line of Belleview avenue 132 feet south to the south line of Seventeenth street; thence west and parallel to the south line of Seventeenth street to the east line of Holly street; thence to the southeast corner of lot five, block 1, resurvey of Whipple's second addition; thence to the southwest corner of said lot 5; thence to the southeast corner of lot 143 of said block 1; thence west along the south line of said lot 143 and this line produced west to a point 150 feet west of the west line of Franklin street; thence in a northerly direction parallel to

the westerly line of Franklin street to the north line produced west of lot A, block 1, of the resurvey of Whipple's second addition; thence north and parallel to the west line of Holly street 198 feet; thence east and parallel to the north line of Seventeenth street produced west to the east line of Holly street; thence south to the north line of Seventeenth street; thence east to the east line of West Prospect Place; thence north 168 feet; thence east to the west line of Belleview avenue; thence south along the west line of Belleview avenue to the place of beginning.

"Section 3. All ordinances or parts of ordinances in conflict herewith are insomuch as they conflict with this ordinance hereby repealed."

The city engineer of Kansas City, Missouri, after the adopting of this ordinance, made out a map or plat and delivered the same to the mayor of said city, in which was embraced a showing of the benefit district. The city clerk of Kansas City, Missouri, issued a notice under his hand and seal to property-owners, notifying them that their property would be taken for the purposes specified in the ordinance of Kansas City, No. 16129. The city clerk also issued the following notice to the appellant in this cause:

"You will take notice that your property will be assessed to compensate for the taking of private property for the purposes specified in the ordinance of Kansas City, No. 16129, entitled 'An Ordinance to open and establish Seventeenth street from Holly street to westerly line of Franklin street,' approved January 5, 1901, and that a jury will be empaneled to make such assessment on the 20th day of May, A. D. 1901, at ten o'clock in the forenoon at the Lower House Council Chamber on the fourth floor of the City Hall building on the southeast corner of Fourth and Main streets in Kansas City, Jackson county, Missouri."

On May 20, 1901, on account of the failure to get service on some of the property-owners, the proceed-

ings were continued by the mayor to July 1, 1901. On July 1, 1901, the following proceedings appear of record:

"In the matter of the proceedings to ascertain and assess just compensation to be paid for private property taken for public use, for the purpose specified in an ordinance of Kansas City, No. 16129, entitled 'An Ordinance to open and establish Seventeenth street from the west line of Holly street to the westerly line of Franklin street,' approved January 5, 1901.

"Hon. James A. Reed, Mayor of Kansas City, presiding:

"Now on this day come John A. Hanley, R. G. Perkins, John Bayha, William Reeves, Charles A. Bickell, F. N. Phelps, the jury summoned herein, and it appearing to the court that they are all qualified and disinterested freeholders of Kansas City, Missouri, they are duly empaneled a jury herein, sworn to faithfully and honestly discharge their duties according to law and the ordinances under which these proceedings are carried on.

"The jury was instructed by the court to go with the city engineer to-day to view the property to be taken and assessed, and this matter and all proceedings herein are continued to Monday, July 8, 1901, at ten of the clock in the forenoon at the Lower House Council Chamber on the fourth floor of the City Hall building on the southeast corner of Fourth and Main streets, in Kansas City, Jackson county, Missouri.

"JAMES A. REED, Mayor."

Thereafter on July 8, 1901, at said City Hall, further proceedings were had as shown by said transcript, as follows:

"In the matter of the proceedings to ascertain and assess just compensation to be paid for private property taken for public use for the purpose specified in an ordinance of said city No. 16129, entitled 'An Ordinance to open and establish Seventeenth street from

Holly street to the westerly line of Franklin street,' approved January 5, 1901.

"Hon. J. P. Lynch, Speaker Lower House of the Common Council of Kansas City, presiding.

"Now on this day comes John A. Hanley, R. G. Perkins, John Bayha, William Reeves, Charles Bickell, F. N. Phelps, the jury summoned herein.

"Also appears S. S. Winn, Second Assistant City Counselor, for the city, and offers in evidence the ordinance and plat under which these proceedings are carried on, and files the affidavit of publication of M. W. Hutchison, of the Kansas City Mail, accompanied with a copy of the notice to be published under order of the Mayor, dated May 20, 1901, showing publication pursuant to said notice in the Kansas City Mail as follows, to-wit:

"And the court adjudged that all parties having been duly notified and all persons interested duly served, the jury having heard the evidence of all persons appearing, and having viewed the property to be taken and assessed, render their verdict and are discharged by the court.

"JOHN P. LYNCH,

"Speaker Lower House of the Common Council."

And on the same day said jury returned the following unanimous verdict:

"In the matter of the proceedings to ascertain and assess just compensation to be paid for private property taken for public use for the purpose specified in an ordinance of the said Kansas City, No. 16129, entitled 'An Ordinance to open and establish Seventeenth (17th) street from Holly street to the westerly line of Franklin street,' approved January 5, 1901, the undersigned jury on oath having heard the proof of the several parties interested and examined personally the property to be taken and assessed, render our verdict as follows, to-wit:

"We find that the damages for the property taken

exceed the benefits to be derived by the city at large and by the property within the benefit limits as prescribed by said ordinance No. 16129."

On the same day the mayor submitted said verdict and proceedings to the Common Council of said city as follows:

"To the Honorable Common Council:

"Gentlemen: I herewith submit for your consideration the verdict and proceedings taken and had by the city under ordinance No. 16129, entitled 'An Ordinance to open and establish Seventeenth street from the west line of Holly street to the westerly line of Franklin street,' approved January 5, 1901."

Whereupon, at a meeting of said Council on July 8, 1901, an ordinance was passed by that body, certified by the proper officers of both houses and approved by the mayor on July 10, 1901, duly numbered (17307) and entitled, which was as follows:

"Be it ordained by the Common Council of Kansas City:

"Section 1. That the verdict and proceedings (reported to the Common Council July 8, 1901, by the mayor) rendered and taken in causing to be ascertained and assessed by a jury, just compensation to be paid for private property taken for the purpose specified in ordinance No. 16129, entitled 'An Ordinance to open and establish Seventeenth street from the west line of Holly street to the westerly line of Franklin street,' approved January 5, 1901, be and the same are hereby confirmed."

Thereafter on July 27, 1901, the following affidavit was filed in the office of the city clerk:

"In the matter of opening and establishing of Seventeenth street from Holly street to Franklin street under ordinance of Kansas City, No. 16129, approved January 5, 1901.

"In the Mayor's Court.

"State of Missouri, ⎱
                      ⎰ ss.
County of Jackson.  ⎰

"A. G. Belinder, upon his oath being duly sworn, states that he is the owner of the following property affected by the judgment rendered in the above entitled cause, to-wit, lots 4, 5, 6, 7, resurvey of Whipple's second addition in block one, Kansas City, Missouri, and that he appeals to the circuit court of said county at Kansas City from the judgment rendered in said cause on the verdict of the jury and that this application for appeal is not made for vexation or delay, but on the merits, because this affiant believes that he is injured by the verdict and judgment of the said court.

"A. G. BELINDER.

"Subscribed and sworn to before me this 27th day of July, 1901.

"Term expires November 18, 1902.

"R. B. GARNETT,
"(Seal)                      Notary Public."

Upon this affidavit for an appeal a transcript of the proceedings before the mayor was certified to the office of the clerk of the circuit court of Jackson county, Missouri.

On January 10, 1902, this cause was tried in the circuit court of Jackson county, Missouri, before a jury. Ordinance No. 16129 was offered in evidence, together with the plat and other testimony tending to prove the matters submitted to the jury.

At the close of the evidence the court instructed the jury as follows:

"You are instructed that this proceeding is for the purpose of assessing damages and benefits that may result from the proposed condemnation, for public use, of Seventeenth street from Holly street to the westerly line of Franklin avenue, under the ordinance of Kansas City, Missouri, numbered 16129, and ap-

proved on the 5th day of January, 1901, and offered in evidence.

"The public use of the property to be taken, under said ordinance, is such that the city must have exclusive possession and control thereof and you are instructed that, for each piece of property so taken, you will ascertain and determine the just compensation therefor to be the actual value thereof.

"For all damages to each piece of property not actually taken, so as to give the city possession, or control of the same, you will ascertain and determine the just compensation therefor to be the actual amount of the damages such property may sustain from the use of the private property taken for the public use for which it may be taken, including all that the city, from time to time, may do, or cause to be done, in, with or upon the private property so taken.

"To pay such compensation, you will assess against the city the amount of benefit to the city and public generally, inclusive of the benefit to any property of the city, within the benefit limits prescribed by the ordinance in evidence; and against the several lots and parcels of private property, exclusive of the improvements thereon, which you may deem benefited by the proposed improvement under said ordinance, and which is within the limits of the benefit district prescribed by ordinance introduced in evidence and shown on the plat introduced in evidence, you will assess the balance of such compensation; each lot or parcel of ground to be assessed with an amount bearing the same ratio to such balance as the benefit to each lot or parcel bears to the whole benefit to all the private property assessed.

"In making up your verdict, you are to be guided by your own judgment as to damages and benefits in connection with all the evidence in the case.

"You will make up your verdict in writing and it

shall be signed by each of you, and you will all return the same into court.

"Before returning and making your verdict you will examine personally the property taken, damaged and assessed.

"The city engineer or his assistant may aid you to put your verdict in proper form and you will call upon him to do so.

"You are not at liberty to pass on the question as to whether there is any public necessity for the proposed proceeding—that being a matter within the discretion of the Common Council."

To the giving of which instruction the Kansas City, Fort Scott & Memphis Railroad Company duly objected and excepted at the time.

Said railroad company thereupon asked the court to instruct the jury as follows:

"The court instructs the jury that in assessing benefits for the proposed opening of Seventeenth street in this proceeding you cannot assess any such benefits against the property of the Kansas City, Fort Scott & Memphis Railroad Company, its successors or assigns, now occupied by the tracks of said railroad company."

The court refused to give said instruction, to which refusal of the court said railroad company duly excepted at the time.

The cause was submitted to the jury and they returned their verdict, in which they assessed the value of the property taken and the damages done to the improvements thereon, in carrying out the purpose of opening of the street specified in ordinance 16129, and then proceeded to assess against the defendant and other property-owners in the benefit district certain amounts to pay the compensation fixed as aforesaid, for the property to be taken and damaged. Against that portion of the railroad yards of the defendant, included in said benefit district, the jury assessed the sum of $456, and the court entered judgment that said verdict

"be adjudged to be binding and conclusive on all parties interested" and that "Kansas City have and hold the land taken" for public use, and that the lands assessed with benefits "stand bound and charged to pay" the several assessments against them and that execution issue to enforce said payments.

From this judgment defendant in due time and form prosecuted this appeal and the cause is now before us for consideration.

## OPINION.

We are not favored in this cause with a brief by respondent or even a suggestion as to the theory upon which this proceeding can be maintained; hence we are left to make such independent investigation of the legal propositions presented by the record in this cause as will meet the contentions of counsel for appellant so ably and clearly presented in their brief.

We have carefully considered the charter provisions of article 7 of the Freeholders' Charter of Kansas City (Ed. 1898), page 111, which furnishes the basis of this proceeding, and we are unable with the record before us, made in pursuance of the charter provisions referred to, to discover upon what possible foundation this proceeding rests or can be maintained. It is fundamental that the power and authority to condemn property and open public streets in Kansas City, Missouri, rests with the municipal authority, and that property cannot be condemned or public streets opened at the instance of any particular individual. We have in this case the proceeding in due form commenced by the proper authority in respect to the opening of Seventeenth street, by the passage of ordinance 16129. In pursuance of this ordinance, proper plats were made by the city engineer and duly filed with the mayor, showing the benefit district in connnection with the opening of the street contemplated, as directed by the

provisions of the charter. In pursuance of the provisions of the charter the mayor organized his court for the purpose of ascertaining the damages by reason of the property taken for said street and the improvements thereon, and for the assessment of benefits to make compensation for the value of the property taken and condemned by reason of the contemplated street. A jury was empaneled, and after having heard the proof of the several parties interested, and examining personally the property to be taken and assessed, they returned a verdict that the damages for the property taken exceeded the benefits to be derived by the city at large and by the property within the benefit limits as prescribed by said ordinance No. 16129. This verdict, by the acting mayor, John P. Lynch, was submitted to the Common Council of the city, and by ordinance No. 17307 fully confirmed and approved, which ordinance was approved by the mayor on July 10, 1901. So far as the municipal government is concerned, as disclosed by the record before us, no further steps were taken toward the completion of the purposes specified in the original ordinance, 16129.

This proceeding it appears reached the circuit court by an appeal on the part of an individual who owned some lots of ground in the benefit district, whose property had neither been taken, damaged or assessed in respect to the opening of this street. The record in this cause discloses that Kansas City did not appeal from the verdict of the jury, nor in the sense of contesting the adjudications upon its rights in the mayor's courts was the city a party to the proceeding in the circuit court, nor is there anything indicated by the record that the city is still undertaking to carry out the purposes specified in the original ordinance, 16129. Upon this state of facts the conclusion is irresistible that upon the return of the verdict by the jury and its confirmation and approval by the city council, there

was an abandonment of the purposes specified in the original ordinance. That the city had a right to discontinue this proceeding is beyond dispute. This right was clearly stated in the case of Simpson v. Kansas City, 111 Mo. l. c. 242. It was there said, MACFARLANE, J., speaking for the court: "It has long been the rule in this State, and is the general rule elsewhere, that, in the absence of statutory regulations to the contrary, a municipal corporation has the right to discontinue proceedings for condemning property for public uses, and to abandon such public improvements at any time before a final award, in the nature of a judgment, in favor of the property-owners for their compensation, is made. [Railroad v. Lackland, 25 Mo. 515; St. Joseph v. Hamilton, 43 Mo. 288; State ex rel. v. Hug, 44 Mo. 116; 2 Dillon on Municipal Corporations, sec. 609; Lewis on Eminent Domain, sec. 656; 3 Sedgwick on Damages, sec. 1166; Mills on Eminent Domain, sec. 311; St. Louis v. Meintz, 107 Mo. 611.]"

Judge Dillon in his most excellent work upon Municipal Corporations (4 Ed.), vol. 2, sec. 608, clearly states the rule as to the right of a city to abandon or discontinue proceedings to open streets. He says: "Under the language by which the power to open streets and to take property for that purpose is usually conferred upon municipal corporations, they may at any time before taking possession of the property under completed proceedings, or before the final judgment, recede from or discontinue the proceedings they have instituted. This may be done, unless it is otherwise provided by legislative enactment, at any time before vested right in others have attached. Until the assessments of damages have been made, the amount cannot be known; and on the whole, it is reasonable that after having ascertained the expense of the project, the corporation should have the discretion to go on with it or not, as it sees fit, it being liable in proper

cases for any wrongful acts injurious to the owner, as shown in the next section.''

In Silvester v. St. Louis, 164 Mo. 601, BURGESS, J., speaking for this court, fully reviews all the authorities and concludes with the full recognition of the right of the city, at any time before any property rights are vested, to abandon or discontinue the proceeding to open a public street. In Whyte v. Kansas City, 22 Mo. App. l. c. 415, it was very appropriately said: ''The city stopped at the passage of the ordinance; it might have proceeded much further in the process of condemnation, and yet not been liable to damages, nor fallen under the authorities cited for plaintiff. There is matter for the council to pass upon at the very end of the condemnation proceeding, in its nature judicial, which may put an end to the proceeding and leave the parties *in statu quo,* which is the amount of damages that have been assessed. The council have, in reserve, the power to determine that the public good to be subserved from the appropriation of private property in a given instance, is not commensurate with the damages awarded.'' To the same effect is St. Joseph v. Hamilton, 43 Mo. 282, where it was ruled that ''the city may dismiss its proceedings at any time before final judgment; . . . and then the only liability that would be incurred would be the expenses. So, if on account of excessive damages it should be deemed unwise or impolitic to proceed, it might abandon the work . . . If the city elects to abandon the enterprise and not to take the property, there is no divestiture of title from the owner, and he is not entitled to pay from the public.'' This case was afterwards affirmed in State ex rel. Rogers v. Hug, 44 Mo. 116.

If the record before us is to be our guide, that Kansas City fully and completely discontinued and abandoned this proceeding upon the return of the verdict by the jury, is too plain for discussion, and this

being true we are unable to ascertain upon what ground Mr. A. G. Belinder can continue this proceeding and undertake, contrary to the wishes of Kansas City, to open a public street within her corporate limits. The record is absolutely silent as to any steps taken by the city to pursue the purposes specified in the original ordinance any further; the city made no complaint at the verdict; its Common Council accepted it, confirmed it and approved it; it was no complaining party to the proceeding in the circuit court and is making no suggestion now in this court as to the support and maintenance of the judgment in this proceeding. Again, under the showing as disclosed by the record in this cause, there was no right of appeal on the part of A. G. Belinder. First, for the reason that the verdict of the jury was not such a verdict as is contemplated by section 4 of article 7 of the charter of the city of Kansas as to authorize an appeal from it. Second, the right of appeal on the part of Mr. Belinder must rest solely upon the charter provisions of section 5, article 7, of the city charter, and he is not such a person affected by said proceeding as is contemplated by that section of the charter which would authorize an appeal by him. The provisions of this section authorizing an appeal, substantially provide that in case the city or any person affected by such proceeding, either as the owner of property taken or damaged or the owner of property assessed, shall feel aggrieved by the verdict, such party so aggrieved may appeal to the circuit court of Jackson county, Missouri. Mr. Belinder's property was neither taken nor damaged, nor was there any assessment of any kind made against his property; in fact his property was in identically the same condition and position after the return of the verdict and the confirmation of it by the city council, as it was before; hence he had nothing to appeal from. The only person under the provisions of the city charter governing this proceeding who was authorized to

prosecute an appeal must be someone whose property has been taken, damaged or assessed by such proceeding.  The right of appeal in civil actions was unknown to the common law, and this appeal rests solely upon the provisions of the city charter, and it is essential to the exercise of this right that the provisions of that, charter shall be substantially pursued.  [State ex rel. v. Woodson, 128 Mo. l. c. 514; State v. Thayer, 158 Mo. 36; Thomas v. Town Mut. Ins. Co., 89 Mo. App. 12; Schroeder v. Jabin, 94 Mo. App. 111.]

Again, it may be said that upon the face of the affidavit of Mr. Belinder, this appeal was unauthorized. Section 5, supra, of the city charter makes it an essential requisite in an affidavit for an appeal that the party appealing, or his agent shall state what interest the party appealing has in the proceeding.  Now, so far as this affidavit is concerned, it is absolutely silent as to any interest of Mr. Belinder, who made this affidavit.  The statement that he was the owner of certain property affected by the judgment is by no means a compliance with the essential requisite of the charter provisions that he must show what interest he has in the proceeding, and from the disclosures of the record, after the return of the verdict by the jury, and its confirmation by the city council, we are unable to conceive of any interest that he had in such proceeding, at least until some further steps were taken by Kansas City to carry out the purposes of the original ordinance.  The remarks of the court in State ex rel. v. Talty, 139 Mo. 379, may very appropriately be applied to the appeal to the circuit court in this case.  It was said:  "But independently of what may be said of the control, duty or power of the courts over property in their custody, no appeal will lie from judgments or orders made affecting the same unless allowed by statute, and by statute appeals are allowed only to those who are aggrieved by judgments, orders  or  decrees  made affecting directly some pecuniary or property rights or

interests of the appellant. Judgments or orders that affect or offend merely the taste or sensibilities of a party constitute no legal grievance, authorize no appeal therefrom."

We have carefully considered all the disclosures of the record in this cause, and we are of the opinion that the conclusion is irresistible that the city, upon the return of the verdict by the jury and its acceptance and approval by the city council, abandoned the proceeding put in operation by ordinance 16129, and it may be further added that the verdict of the jury and its approval by the city council did not in any way affect the interest in any property of A. G. Belinder, and was not such an adjudication of any of his rights as authorized an appeal, and that the circuit court was without jurisdiction to render the judgment disclosed by the record.

With these views it results in the conclusion that the judgment should be reversed, and it is so ordered.

All concur.